EDWARDS *v.* SMYLY *et al.*

No. 7406.  April 19, 1930.

492

*Hall, Grice & Bloch,* for plaintiff.

*J. H. Milner,* for defendants.

HILL, J. (After stating the foregoing facts.)

The act of 1925 (Ga. L. 1925, pp. 119, 126, art. 6) provides:

"Section 1. Whenever the superintendent of banks shall find that the capital stock of any bank has become impaired or reduced as much as ten per cent of its par value from losses or any other causes, the superintendent of banks shall notify and require such bank to make good its capital stock so impaired or reduced within sixty (60) days, by an assessment upon the stockholders thereof, and it shall be the duty of the officers and directors of the bank receiving such notice to immediately call a special meeting of the stockholders for the purpose of making an assessment upon its stockholders sufficient to cover the impairment of the capital, payable in cash, at which meeting such assessment shall be made, provided that such bank may reduce its capital to the extent of the impairment if such reduction will not place its capital below the amount required by this act. At any such special meeting of the stockholders a majority of the stock outstanding at the time shall be deemed a quorum, and such assessment may be made upon a majority vote of the quorum present.

"Section 2. If any stockholder should refuse or neglect to pay any assessment which may be levied by the special stockholders' meeting for the purpose of making good any impairment or reduc-

tion of capital within thirty (30) days after such assessment shall have been levied, the directors of such bank shall have the right to sell to the highest bidder, at public outcry, for cash, a sufficient amount of the stock of such stockholder to cover the assessment after giving previous notice of such sale, once a week for two (2) weeks, in the newspaper in which the sheriff's advertisements of the county in which the bank is located are published. In the event said stock is sold for less than the amount of the assessment upon same and necessary costs of sale, the bank shall have the right to sue such stockholder for the difference between the amount of the assessment and the proceeds of the sale. Out of the proceeds of the sale of said stock the directors shall pay the necessary costs of sale and the amount of the assessment called for thereon, and the balance, if any, shall be paid to the person or persons whose stock has been sold, or to the holder of the certificate therefor upon the surrender of such certificate." etc.

It is contended by the plaintiff that when certain stockholders paid the sums of money into the bank, the latter could not thereafter treat the non-paying stockholders as being in default as to their assessment and sell their stock; that when this money was paid to meet the assessment of those who failed to pay, the bank had no remedy against the non-paying stockholders. These contentions are without merit. The charter of the bank and the laws of the State declare what the obligations of the stockholders of the bank are among themselves, and to the State; and we think that under the stipulations in this case, and the law applicable thereto, the alleged payments to the bank did discharge the obligations of the bank to the State by complying with the requirements of the banking department, but that the payments did not discharge the obligations of the delinquent stockholders who refused to pay their assessments to the bank; and it is obvious that it was not the intention of those who paid these amounts into the bank to extinguish the obligations of delinquent stockholders against whom assessments had been made, and especially one who was himself a stockholder and who voted for the assessment; and under the banking law of the State the bank itself is bound to pursue its remedies against defaulting stockholders. The stockholders who made the payments in the present case were forced either to pay the assessments of their own and delinquent stockholders in order to enable the bank to resume

business, or else the affairs of the bank would have to be liquidated by the superintendent of banks, with the result of heavy loss to themselves. They were therefore vitally interested in seeing that these assessments were paid. As appears from the contract set out above, they were merely seeking to protect their own interests and the interests of the depositors of the bank; and the plaintiff can not get the direct benefit of these payments, in the absence of express proof that they were intended as payments for all the stockholders. Plaintiff does as a stockholder, in a way, receive a benefit from the payment in the enhanced value of his stock, and from the fact that the bank was kept a going concern. The purpose of the law which authorizes these assessments is that a bank's capital shall be maintained unimpaired; and where an assessment is made and the stockholder against whom it is made fails and refuses to pay the same, the sale of the stock is expressly provided for in the banking act. It is conceded that the plaintiff in error failed to pay the assessment, for which he as a stockholder had voted; and therefore, under the law as we construe it, he is bound to pay the assessment, or else his stock can be sold as provided by the banking act. The court below did not err in refusing an injunction.

The other headnotes require no elaboration.

*Judgment affirmed. All the Justices concur.*

RUSSELL, C. J., concurring specially. I felt it my duty to dissent in the case of *Toombs* v. *Citizens Bank of Waynesboro,* 169 *Ga.* 115 (149 S. E. 645), for the reason that as to a bank chartered before the passage of the banking act the effect would be retroactive. I am still of the same opinion. However, under the facts in this record I am of the opinion that the plaintiff in error waived the retroactive feature, and for that reason I concur in the judgment of affirmance.